UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>STEVEN BREWER,<br>ADAM ERICKSON,<br>BREWER INVESTMENT GROUP, LLC ,<br>BREWER FINANCIAL SERVICES, LLC, and<br>BREWER INVESTMENT ADVISORS, LLC,<br><br>Defendants. | Case No. 10-cv-6932<br><br>HONORABLE JOHN Z. LEE |

## MOTION FOR ENTRY OF FINAL JUDGMENT
## AS TO STEVEN BREWER AND ADAM ERICKSON

Plaintiff Securities and Exchange Commission hereby requests that the Court order permanent injunctions, disgorgement, prejudgment interest, and civil penalties against defendants Steven Brewer and Adam Erickson.

I. Background

The Commission filed its complaint in this matter on October 28, 2010. Docket No. 1. The Commission alleged that defendants Brewer and Erickson engaged in fraudulent offerings of unregistered securities resulting in violations of Sections 5(a), 5(c) and 17(a) of the Securities Act of 1933 ("Securities Act"), Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), and Rule 10b-5 promulgated thereunder. The Commission also alleged that defendants Brewer and Erickson aided and abetted Brewer Financial Services, LLC's ("BFS") violations of Section15(c)(1) of the Exchange Act, and Brewer Investment Advisors, LLC's ("BIA") violations of Sections 206(1) and 206(2) of the Investment Advisers Act of 1940

("Advisers Act").

Brewer and Erickson have signed consents in which they admit the Court's jurisdiction over them and the subject matter of this action and agree to entry of a permanent injunction against all violations alleged in the complaint. *See* Exhibit A, Brewer consent and Exhibit C, Erickson consent. Each of them has also consented to determination of the remaining issues by the Court by motion, without trial. *Id.*

II.     Remedial Relief – Injunctions

Brewer has consented to the entry of a permanent injunction that prohibits him from violating Sections 5(a), 5(c) and 17(a) of the Securities Act, Section 10(b) of the Exchange Act, and Rule 10b-5, and from aiding and abetting violations of Section15(c)(1) of the Exchange Act and Sections 206(1) and 206(2) of the Advisers Act. Exhibit A, Brewer Consent, at ¶ 2. Erickson has also consented to the entry of a permanent injunction that prohibits him from violating Sections 5(a), 5(c) and 17(a) of the Securities Act, Section 10(b) of the Exchange Act, and Rule 10b-5, and from aiding and abetting violations of Section15(c)(1) of the Exchange Act and Sections 206(1) and 206(2) of the Advisers Act. Exhibit B, Erickson Consent, at ¶ 2.

III.    Monetary Relief – Disgorgement and Penalties

In their consents, Brewer and Erickson have agreed to submit the issues of disgorgement and penalties to the Court by motion, without trial. Exhibit A, Brewer Consent at ¶ 3; Exhibit B, Erickson Consent at ¶ 3. In addition, Brewer and Erickson have agreed that, for purposes of the motion, the allegations of the Commission's complaint would be deemed to be true. *Id.*

   a.   Relevant Facts

      i.  Complaint

1.      In late 2000, Steven Brewer created Brewer Investment Group, LLC ("BIG"), a financial services holding company. Complaint ¶¶ 7, 18, 25. In 2005, BIG's wholly-owned

2

subsidiary, Brewer Financial Services, LLC ("BFS"), a broker-dealer, registered with the Securities and Exchange Commission as a broker-dealer, and in 2008, BIG's wholly-owned subsidiary Brewer Investment Advisors, LLC ("BIA"), an investment adviser, registered as an investment adviser. Complaint ¶ 25. During the period at issue, BFS earned commissions on securities transactions for its customers, and BIA earned investment advisory fees from its clients, but neither BIG, BFS nor BIA were profitable. Complaint ¶¶ 25, 26.

      2.      By January 2009, BIG and its subsidiaries were struggling financially. Complaint ¶ 26. In addition to sustaining consolidated operating losses of approximately $3 million during 2008, BIG received a notice of default on a $2.5 million loan in January 2009. Complaint ¶ 26.

      3.      From June 2009 through at least the end of September 2010, Defendants Brewer, Erickson, BIG, BFS, and BIA, participated in fraudulent, unregistered offerings of promissory notes issued by FPA Limited ("FPA"), an Isle of Man company, in the aggregate amount of $5.6 million to at least 74 investors. Complaint ¶¶ 1, 7, 30, 31, 32. Through the fraudulent offerings, BIG and Brewer funneled cash to BIG and one of its subsidiaries when the entities were under significant financial distress. Complaint ¶¶ 1, 42. The offering materials that Defendants created and used for the offerings of FPA promissory notes ("FPA Notes") failed to disclose that over 90% of the proceeds would be disbursed at Brewer's direction to BIG and then to its wholly-owned subsidiaries. Complaint ¶¶ 1, 3, 39, 40, 45. In addition, the offering materials misrepresented the risk of the investment and failed to disclose the precarious financial condition of BIG and its subsidiaries. Complaint ¶¶ 1, 42, 46.

      4.      Defendants Brewer and Erickson were officers and owners of BIG. Complaint ¶ 7. Brewer owned over 25% of BIG and was its CEO and chairman. Complaint ¶ 18. Erickson was, at various times, the COO, executive vice president, a managing principal, and partial owner of BIG. Complaint ¶ 19.

5. Defendant Erickson was an officer and/or managing principal of Defendant BFS, a registered broker-dealer with 25 branch offices located in Colorado, Illinois, Minnesota, Wisconsin, North Carolina, Arizona, Florida, Massachusetts, and Missouri. Complaint ¶ 8. Through Erickson, BFS reviewed and approved the fraudulent offering documents used to sell the FPA Notes. Complaint ¶ 8. BFS, through Erickson, directed its associated persons to solicit investors, including customers, and prospective customers to purchase the notes. Complaint ¶ 8.

6. Defendant Erickson was an officer and managing principal of Defendant BIA, a registered investment adviser which also had branch offices located in several states. Complaint ¶ 9. Through Erickson, BIA reviewed and approved the fraudulent offering documents used to sell the FPA Notes. Complaint ¶ 9. BIA, through Erickson, directed its associated persons to recommend that advisory clients purchase the notes. Complaint ¶ 9.

7. Through the offering materials for the FPA Notes, Brewer and Erickson implicitly and explicitly represented to investors that the proceeds of the offerings would be used to procure collateral which would be used to secure the notes. Complaint ¶¶ 2, 39, 40, 58, 60. Instead, over 90% of the proceeds were disbursed at Brewer's direction to BIG and then spent, including making payments to one of BIG's subsidiaries, and the promised collateral was never obtained. Complaint ¶¶ 2, 39, 40, 45, 47, 60. As a result, representations in the offering materials concerning the use of proceeds and representations concerning the risk of the investment were materially false and misleading. Complaint ¶¶ 2, 39, 40, 46, 55, 57, 59.

8. Brewer and Erickson also did not disclose to investors the precarious financial condition of BIG in the offering materials or otherwise. Complaint ¶¶ 3, 51, 52, 53. In fact, BIG has sustained millions of dollars of operating losses, has insufficient funds to pay its current expenses and has failed to meet its obligations to creditors and noteholders. Complaint ¶¶ 3, 53.

4

These material omissions rendered statements in the offering documents materially misleading Complaint ¶ 3, 51, 55, 56.

9. In the offering materials, Brewer and Erickson also did not disclose that BIG was failing to make the required interest payments on the FPA Notes being sold to investors. Complaint ¶ 4, 62, 63, 64. Nor did Defendants disclose that material information to prospective investors in other communications. Complaint ¶¶ 4, 62, 63, 64. These material omissions rendered statements in the offering documents materially misleading Complaint ¶¶ 4, 67.

10. Defendant Brewer originated the fraudulent offering of the FPA Notes and participated in creating the fraudulent offering documents used to sell the notes. Complaint ¶¶ 5, 28, 29. Brewer, acting as a director of FPA, signed the FPA Notes that were sent to investors. Complaint ¶ 33. Brewer directed that the notes be sold and directed that the notes be offered to specific investors. Complaint ¶¶ 5, 32. Brewer also controlled the bank account into which the proceeds of the offerings were deposited and then disbursed, primarily to BIG. Complaint ¶¶ 5, 12, 41. Brewer knew that the representations in the offering documents concerning the use of proceeds and risk were materially false and misleading. Complaint ¶¶ 5, 48, 49, 60. He also knew that material information about the precarious financial condition of BIG and BIG's failure to make required interest payments on the notes was not being disclosed to prospective investors. Complaint ¶ 5, 54, 65, 66. Nonetheless, Brewer continued to sell the notes and caused others to do so. Complaint ¶ 5, 54, 68.

11. Defendant Erickson reviewed and approved the fraudulent offering documents used to sell the FPA Notes. Complaint ¶¶ 6, 32. Erickson directed BFS and BIA to sell the notes and encouraged individuals associated with those entities to sell the notes. Complaint ¶¶ 6, 32. He knew that over 90% of the proceeds of the offerings were being funneled to BIG and were not being used to procure collateral for the notes. Complaint ¶¶ 6, 45. He knew that the

5

representations in the offering documents concerning the use of proceeds and risk were materially false and misleading. Complaint ¶¶ 6, 50, 61. Erickson also knew that material information about the precarious financial condition of BIG and BIG's failure to make required interest payments on the notes was not being disclosed to prospective investors. Complaint ¶¶ 6, 54, 65, 66. Nonetheless, Erickson continued to cause BFS and BIA to sell the notes. Complaint ¶¶ 6, 54, 68.

12. As a result of the conduct alleged in the Complaint, Defendants engaged in and, unless enjoined, will continue to engage in transactions, acts, practices and courses of business which violate Sections 5(a), 5(c) and 17(a) of the Securities Act, Section 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder. Complaint ¶¶ 10, 75 – 85. Defendant BFS engaged in and, unless enjoined, will continue to engage in transactions, acts, practices and courses of business which violate Section15(c)(1) of the Exchange Act, and Defendants Brewer and Erickson aided and abetted those violations. Complaint ¶¶ 10, 86 - 90. Defendant BIA engaged in and, unless enjoined, will continue to engage in transactions, acts, practices and courses of business which violate Sections 206(1) and 206(2) of the Advisers Act, and Defendants Brewer and Erickson have aided and abetted those violations. Complaint ¶¶ 10, 91 – 96.

    ii. Contempt

13. On October 29, 2010 this Court entered an Order, to which each Defendant consented, ordering Defendants to, among other things, provide an accounting to the Commission. Docket No. 14. The Order detailed the specific information required to be included. *Id.*

14. Defendants failed to provide the accounting as required and the Commission moved for contempt. Docket No. 32. Magistrate Judge Keys issued a Report and

Recommendation finding that each Defendant was in contempt for failure to provide the accounting and obey other provisions of the Order. Docket No. 94. Defendants objected to the Report and Recommendation, but Judge Manning overruled the objections, found the Defendants to be in contempt, and, on August 15, 2011, ordered the Defendants to comply with her earlier Order. Docket No. 97, No. 106, and No. 107. She further ordered the Defendants to pay a sanction of $1,000 per day until they had complied with her Orders. Docket No. 106 and No. 107.

15. On November 28, 2011, Defendants filed a Motion seeking a finding that they had purged their contempt by filing with the motion accountings signed the same date as the Motion. Docket No. 145. In response the Commission agreed that the Defendants had, finally, complied with the Court's Order of October 29, 2010.

### iii. Brewer's ill-gotten gains

16. All of the proceeds of the fraud were deposited into bank accounts in the name of FPA USA. *See* Declaration of Donna Walker [Docket No. 7-4] at p. 3, ¶ 6.

17. Steven Brewer was the sole signatory and decision maker for the FPA USA bank accounts into which the proceeds of the fraud were deposited. *See* Declaration of Donna Walker [Docket No. 7-4] at p. 2, ¶ 5.

18. FPA USA made payments to BIG, totaling $5,355,100.00. BIG Accounting [Docket No. 145-36] at ¶ 9; Declaration of Donna Walker [Docket No. 7-4] at p 4, ¶ 8..

19. Steven Brewer was the sole signatory and decision maker for the BIG bank accounts into which the payments from FPA USA to BIG were deposited. Supplemental Declaration of Donna Walker, Exhibit C hereto, at ¶ 4.

20. Steven Brewer received compensation of at least $218,052.26 while the fraud was being perpetrated. Brewer Accounting [Docket No. 145-2] at p. 4, ¶ 12.

iv. Erickson's ill-gotten gains

21.     Adam Erickson received compensation of at least $215,760.35 from BFS while the fraud was being perpetrated. Erickson Accounting [Docket No. 145-20] at p. 5, ¶ 13.

22.     BFS received, through BIG, proceeds of the fraud of approximately $850,000. Declaration of Donna Walker [Docket No. 7-4] at p 4, ¶ 8.

23.     From June, 2009 through September, 2009, BFS operated at a net loss of over $1Million. Supplemental Declaration of Donna Walker, Exhibit C, at ¶ 6; *see also* Complaint ¶ 25.

   b. <u>Legal Analysis</u>

      i. Disgorgement

Disgorgement plays a central role in the enforcement of the securities laws. The disgorgement remedy is necessary to prevent a defendant from profiting from his illicit conduct and to protect investors by maintaining the integrity of the securities markets. *SEC v. Texas Gulf Sulphur Co.*, 466 F.2d 1301, 1308 (2d Cir. 1971), *see also CFTC v. Hunt*, 591 F.2d 1211, 1222 (7th Cir. 1979). The Seventh Circuit has explained that disgorgement is a remedial measure to deter future violations of the securities laws and to deprive wrongdoers of their ill-gotten gains and is not a punitive measure. *See Rowe v. Maremont Corp.*, 850 F.2d 1226, 1241 (7th Cir. 1988).

In determining the amount of disgorgement, any uncertainty in the calculation should fall on the wrongdoer. *Id.*, *see also SEC v. Patel*, 61 F.3d 137, 140 (2d Cir. 1995). The disgorgement order need only be a reasonable approximation of the profits causally connected to the violation. *SEC v. First City Financial Corp.*, 890 F.2d 1215, 1231 (D.C. Cir. 1989). As a result, the district court is not required to trace every dollar retained. *See SEC v. First Jersey Sec. Inc.,* 101 F.3d 1450, 1475 (2d Cir. 1996). Once the SEC has established that the

disgorgement figure reasonably approximates the unlawful proceeds, the burden of proof shifts to the defendant, "who must demonstrate that the disgorgement figure is not a reasonable approximation." *Id.*, *SEC v. Hughes Capital Corp.*, 917 F. Supp. 1080, 1085 (D.N.J. 1996), *aff'd* 124 F.3d 449 (3d Cir. 1997).

Moreover, a "person who controls the distribution of illegally obtained funds is liable for the funds he dissipated as well as the funds he retained." *SEC v. Platforms Wireless Intern. Corp.*, 617 F.3d 1072, 1098 (9th Cir. 2010). "[T]he amount of disgorgement should include all gains flowing from the illegal activities." *SEC v. JT Wallenbrock & Assoc.*, 440 F.3d 1109, 1114 (9th Cir. 2006). Courts have consistently held that disgorgement liability should not be reduced for business or any other expenses. *SEC v. Kenton Capital Ltd.*, 69 F. Supp. 2d 1, 16 (D.D.C. 1998) ("overwhelming weight of authority hold[s] that securities law violators may not offset their disgorgement liability with business expenses") (citations omitted); *SEC v. Great Lakes Equities Co.*, 775 F. Supp. 211, 214 (E.D. Mich. 1991), *aff'd,* 12 F.3d 214 (6th Cir. 1993) ("deductions for overhead, commissions and other expenses are not warranted. The manner in which defendants . . . chose to spend their misappropriation is irrelevant…"); *SEC v. Dimensional Entm't. Corp.*, 493 F. Supp. 1270, 1283 (S.D.N.Y. 1980) (defendant's "expenses in carrying out his scheme and in defending himself are hardly appropriate or legitimate deductions from the amount he received for his own benefit").

In addition, where two or more individuals or entities collaborate or have a close relationship in engaging in the violations of the securities laws, they should be held jointly and severally liable for the disgorgement of illegally obtained proceeds. *Platforms Wireless,* 617 F.3d at 1098, *see also SEC v. First Pacific Bancorp.*, 142 F.3d 1186, 1191 (9th Cir. 1998). And when defendants use all of the investor's funds to operate their scheme and invest in speculative

business ventures for the defendants' benefit, they should also be held jointly and severally liable. *Wallenbrock*, 440 F.3d at 1117.

### 1. Brewer should be liable, with BIG, for disgorgement of $5,355,200

Steven Brewer was the sole signatory and decision maker for the accounts into which the proceeds of the fraud were deposited. *See* Supplemental Declaration of Donna Walker, Exhibit C, at ¶ 4. Thus, because he controlled the distribution of the illegally obtained funds he should be liable for the entirety of the funds received by BIG. *See Platforms Wireless,* 617 F.3d at 1098. The fact that the money was spent should not relieve him of liability. *Id.* Nor should the Court be persuaded by any argument that he, himself, did not receive the money. His businesses, carrying his name, took and spent the money through accounts he alone controlled. Clearly he is responsible and should be found liable. *See Wallenbrock*, 440 F.3d at 1117.

Moreover, defendant Brewer should be jointly and severally liable with BIG for the entire proceeds of the fraud. Brewer had a close relationship with BIG. It carried his name, he was the manager, Chief Executive Officer, and Chairman of BIG, and he was the sole signatory of BIG's bank accounts. *See* Supplemental Declaration of Donna Walker, Exhibit C, at ¶ 4, Complaint ¶ 18. Brewer and BIG had a close relationship in engaging in the violations of the securities laws. *See* Complaint ¶¶ 1, 5, 17, 18, 28, 32, 33,39, 45, 49,52, 58, 60. And the purpose of the violative scheme was to operate and invest in BIG for the benefit or Brewer and BIG. As a result Brewer should be held jointly and severally liable with BIG for disgorgement of the entire proceeds of the fraud. *See Platforms Wireless,* 617 F.3d at 1098, *First Pacific Bancorp.*, 142 F.3d at 1191, *Wallenbrock*, 440 F.3d at 1117.

### 2. Erickson should disgorge $215,760.35

Adam Erickson received $215,760.35 from the Brewer entities while the fraudulent scheme was ongoing. Erickson Accounting [Docket No. 145-20] at p. 5, ¶ 13. Erickson may

10

argue that the money he received was not ill-gotten gains or was paid for legitimate services. It is clear, however, that without the investor's money, the Brewer entities would not have had the funds to pay Erickson. *See* Declaration of Donna Walker [Docket No. 7-4] at p 4, ¶ 8, Supplemental Declaration of Donna Walker, Exhibit C, at ¶ 6; *see also* Complaint ¶ 25. He should not be allowed to argue that he received only untainted money while investor funds were spent on legitimate expenses. Instead, the untainted money should be held to have been spent first on legitimate expenses, and only money left over after paying legitimate expenses should be allocated to Erickson. There was, however, no untainted money remaining after all legitimate expenses were paid. *See* Declaration of Donna Walker [Docket No. 7-4] at p 4, ¶ 8, Supplemental Declaration of Donna Walker, Exhibit C, at ¶ 6; *see also* Complaint ¶ 25. In fact, for most of the relevant period, the Brewer entities did not have enough untainted money to pay all of their expenses and used investor funds for that purpose. *See* Supplemental Declaration of Donna Walker, Exhibit C, at ¶ 6; *see also* Complaint ¶ 25.

      ii.   <u>Prejudgment Interest</u>

Disgorgement often includes prejudgment interest to insure that wrongdoers do not profit from their illegal conduct. *SEC v. Manor Nursing Centers, Inc.,* 458 F.2d 1082, 1105 (2d Cir. 1972); *SEC v. Cross Fin. Services*, 908 F. Supp. 718, 734 (C.D. Cal. 1995). In this case, the consents signed by Brewer and Erickson specifically provide that the Court shall order prejudgment interest on the disgorgement ordered. *See* Exhibits A and B at ¶ 3. In Commission actions the pre-judgment interest is often based on the rate of interest used by the Internal Revenue Service for the underpayment of federal income tax as set forth in 26 U.S.C. § 6621(a)(2)." Prejudgment interest on $5,355,100 from October 29, 2010, the date of the Court's first Order in this matter, to June 25, 2012 is $296,784.82. Supplemental Declaration of Donna Walker, Exhibit C, at ¶ 8. As a result, Brewer should pay disgorgement pus prejudgment interest

totaling $5,651,884.82. Prejudgment interest on $215,760.35 for the period of October 29, 2010 through June 25, 2012 is $11,957.65. Supplemental Declaration of Donna Walker, Exhibit C, at ¶ 9. Therefore Erickson should pay disgorgement plus prejudgment interest totaling $227,718.

       iii. <u>Penalties</u>

Civil penalties under the federal securities laws are calculated using a three-tier penalty structure. *See* 15 U.S.C. §§ 77t(d)(2), 78u(d)(3)(B). Section 20(d) of the Securities Act and Section 21(d)(3) of the Exchange Act contain identical penalty provisions. The amount of the "civil penalty is to be determined by the Court 'in light of the facts and circumstances' of the particular case." *SEC v. Kenton Capital, Ltd.*, 69 F. Supp. 2d 1, 17 (D.D.C. 1998). Third-tier civil penalties are appropriate when the violation "involved fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement;" and "such violation directly or indirectly resulted in substantial losses or created a significant risk of substantial losses to other persons." 15 U.S.C. §§ 77t(d)(2)(C), 78u(d)(3)(B)(iii). The maximum third-tier penalty for defendants' conduct is the greater of $150,000 per violation for individuals, or alternatively, "the gross amount of pecuniary gain" to such defendant as a result of the violation." 15 U.S.C. §§ 77t(d)(2)(C), 78u(d)(3)(B)(iii); 17 C.F. R. §§ 201.1004 (amending the statutory amounts).

The facts in this case easily meet the statutory requirements for a third-tier penalty. The illegal scheme involved fraud and deceit, resulting in charges of securities fraud against Brewer and Erickson, and caused substantial losses to investors. Brewer and Erickson's acts in furtherance of the scheme also involved fraud and deceit and caused, at least, a significant risk of investor loss. Investors have lost the majority of the $5.6 million invested.

In determining the amount of a civil penalty, courts have considered various factors including: (1) the egregiousness of the violations at issue; (2) the degree of the defendant's scienter; (3) whether the violations were isolated or recurrent; (4) a defendant's failure to admit

wrongdoing; and (5) whether the defendant's conduct created substantial losses or the risk of substantial losses to investors. *See e.g.*, *Universal Express*, 646 F. Supp. 2d 552, 568 (S.D.N.Y. 2009).

Brewer's fraudulent conduct was egregious, recurrent, and, at least, highly reckless. He knowingly concocted and executed this scheme to defraud investors of millions of dollars. As a result, the Court should assess a third-tier penalty of his gross pecuniary gain against him. *See, e.g., SEC v. Alliance Leasing Corp.,* 28 Fed. Appx. 648, 2002 WL10482, at *2 (Jan. 3, 2002 9th Cir.); *SEC v Yuen*, 272 Fed. Appx. 615, 2008 WL 886093, at *2 (Apr. 1, 2008 9th Cir.).

Erickson's fraudulent conduct was also egregious, recurrent, and, at least, highly reckless. Erickson, despite his review of the offering materials being used and his knowledge of facts that were not disclosed in the offering materials, caused BFS and BIA to sell the fraudulent notes to numerous investors. As a result, the Court should assess a third-tier penalty of his gross pecuniary gain against him. *Id*.

IV. Conclusion

For the reasons stated above, the Commission respectfully requests that the Court enter the permanent injunctions to which Brewer and Erickson have consented, and order them to pay disgorgement, prejudgment interest and a civil penalty. A proposed final judgment is attached hereto as Exhibit D.

Dated: July 12, 2012

                Respectfully submitted,

                /s/ Polly Atkinson
                Polly Atkinson (Colo. Bar # 18703)
                Attorney for Plaintiff
                Securities and Exchange Commission
                1801 California Street, Suite 1500
                Denver, CO 80202
                Phone: (303) 844-1046

        Fax:  (303) 844-1068
        Email:  atkinsonp@sec.gov


        Steven C. Seeger
        Attorney for Plaintiff
        U.S. Securities and Exchange Commission
        175 West Jackson Blvd., Suite 900
        Chicago, Illinois 60604
        Phone:  (312) 353-7390
        Fax:  (312) 353-7398
        Seegers@sec.gov